# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELTER GENERAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14-CV-190-TCK-PJC ) |
| EARTH SMART CONSTRUCTION, INC., *et al.* | ) ) ) |
| Defendants, | ) ) |

## OPINION AND ORDER

Before the Court are three pending motions: Motion to Dismiss for Lack of Jurisdiction/Venue (Doc. 49), filed by Defendants Robert and Janet Smith pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1) Motion"); Plaintiff's Motion to Dismiss Defendant Robert and Janet Smith's Counterclaims (Doc. 45), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6) Motion"); and Plaintiff's Motion to Dismiss Defendants Oklahoma Turnpike Authority and National American Insurance Company (Doc. 56), filed pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Rule 41(a)(2) Motion").

## I.  Factual Background

On August 29, 2012, Defendant Bobbie Zinn ("Zinn") was involved in a multi-vehicle accident in Sapulpa, Oklahoma ("Accident"), while driving a semi-tractor and trailer owned by Defendant Mark Remington ("Remington"). Plaintiff Shelter General Insurance Company ("Shelter") had issued to Remington two insurance policies – one on the 2001 Freightliner semi-tractor involved in the Accident and one on the 1995 Doonan trailer involved in the Accident ("Policies"). The Policies provide liability coverage for bodily injury and property, each with coverage limits of $100,000. The Policies contain a provision stating:

> Two Or More Coverage Forms or Policies Issued By Us
> If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

(Compl. ¶ 19.)

On July 26, 2013, Shelter filed a Petition in Interpleader in the District Court for Creek County, Oklahoma, requesting that it be permitted to interplead $100,000 of insurance proceeds with and allow the court to divide the funds among the defendants ("Creek County Action").[1] Although cross-claims were filed among the defendants, no counterclaims were filed against Shelter. Shelter dismissed the Creek County Action without prejudice "when [its] current counsel determined that the interpleader action would not resolve all issues and claims involving [its] insured," (Reply in Support of Mot. to Dismiss 2), and Shelter is no longer a party to the action. The cross-claims remain pending.

On April 24, 2014, Shelter filed a Complaint for Declaratory Judgment in this Court, seeking a declaration that the amount of liability coverage provided by the Policies is limited to $100,000 due to the above-cited provision. Shelter named thirteen defendants who (1) have or may assert claims for bodily injury and/or property damage arising out of the Accident, including Defendants Earth Smart Construction, Houston Edsel d/b/a/ Foster Oil Company, the Oklahoma Turnpike Authority ("OTA"), the City of Sapulpa, Oklahoma, Kent Thompson, Robert and Janet Smith ("Smiths"), and Debra Leister ("Leister"); or (2) have asserted subrogation claims arising out of the

---

[1] Shelter's former counsel named Remington Trucking, instead of Mark Remington, as the insured in the Creek County Action.

2

Accident, including Defendants CNA Insurance Company, QBE Insurance Company, and National American Insurance Company ("NAICO") (collectively "Insurer Defendants").

## II. The Smiths' Rule 12(b)(1) Motion

The Smiths move to dismiss the action for lack of subject matter jurisdiction based upon three arguments, each of which can be quickly rejected. First, the Smiths argue: "Diversity of jurisdiction does not exist in this case as [Insurer Defendants] and Zinn have significant contacts with this State so that in personam jurisdiction is still proper in Creek County, Oklahoma." (Mot. to Dismiss 5.) In one of the more egregious misunderstandings of federal law this Court has encountered, Tracy Cinocca ("Cinocca"), counsel for the Smiths, seems to argue that this Court lacks *diversity* jurisdiction under 28 U.S.C. § 1332 because the Creek County court may exercise *personal* jurisdiction over certain defendants present in both actions. The Complaint alleges that Shelter is of diverse citizenship from all Defendants and the amount in controversy exceeds $75,000. The Smiths have done nothing to demonstrate otherwise, and their argument flows from such a flawed legal premise that no further discussion is warranted.

Second, the Smiths seek to dismiss the action "for improper venue and forum non-conveniens due to the interrelationship of matters pending in Creek County" or alternatively to transfer the action to Creek County. (Mot. to Dismiss 9-13.) The Smiths cite only Oklahoma statutes and case law in support of this argument. Oklahoma statutes do not provide any authority for dismissal or transfer of this federal action. To the extent the Smiths attempt to seek dismissal for improper venue pursuant to 28 U.S.C. § 1391(b), they have failed to challenge Shelter's venue allegations or make any showing that venue is not proper in this judicial district. To the extent the Smiths seek transfer of this action to Creek County pursuant to 28 U.S.C. § 1404(a), this statute does

not permit transfer of an action from federal to state court. *See Cummings v. Conglobal Indus., Inc.*, No. 07-CV-409-TCK, 2007 WL 3393090, at *1-2 (N.D. Okla. Nov. 8, 2007) (citing cases).

Finally, the Smiths contend that dismissal is proper because "all companies with a potential interest" have not been added. (Mot. to Dismiss 14.) The Smiths did not cite any relevant authority, seek leave to add required parties pursuant to Federal Rule of Civil Procedure 19(a), or demonstrate that required parties could not be feasibly joined in the action. This argument is undeveloped and wholly lacking in merit. The Rule 12(b)(1) Motion is denied.

## III. Shelter's Rule 12(b)(6) Motion[2]

The Smiths allege the following counterclaims: "[b]reach of implied warranty by forseeable [sic] beneficiaries and bad faith and/or reckless negligence, thereby entitling Plaintiff [sic] to [damages] . . . . in an amount in excess of $10,000." (Countercl. & Aff. Defenses, Doc. 40, ¶ 10.) The Smiths also allege that Shelter "has failed . . . to properly present all insurance policies it has in effect potentially relating to this accident, and as such has committed fraud . . . ." (*Id.* ¶ 5.) The Court construes these allegations as asserting four total counterclaims: breach of implied warranty, breach of the duty of good faith and fair dealing applicable to insurance contracts, "reckless" negligence, and fraud (constructive and actual). The claims for breach of implied warranty and the duty of good faith are presumably premised on the Policies. The claims for "reckless negligence"

---

[2] Shelter submitted only portions of the Policies in support of its Rule 12(b)(6) Motion. Because the Policies are referenced in and central to the Complaint, the motion is properly considered under Rule 12(b)(6). *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). Further, exercising its discretion, the Court elects not to consider any evidence outside the pleadings submitted by the Smiths in their response to the Rule 12(b)(6) Motion. *See Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998) (explaining that "courts have broad discretion in determining whether or not to accept materials beyond the pleadings" in ruling on a Rule 12(b)(6) motion).

and fraud appear to be premised upon Shelter's negligent, reckless, and/or intentional failure to disclose the existence of two other insurance policies. The Smiths allege, based on their belief, that these non-disclosed policies are between Shelter and Zinn, and Shelter and Leister. (*See* Answer, Doc. 40, ¶¶ 5, 7.) Shelter moves to dismiss all counterclaims.[3]

The claims for breach of implied warranty and insurance bad faith fail because Shelter does not owe the Smiths any contractual or statutory duties, as the Smiths are not parties to the Policies or any other policies issued by Shelter. *See Hoar v. Aetna Cas. & Surety Co.*, 968 P.2d 1219, 1223 (Okla. 1998) ("We affirm once more that absent a statutory or contractual relationship an injured party may not maintain a bad faith action against a public liability insurer."); *Gianfillippo v. Northland Cas. Co.*, 861 P.2d 308, 310 (Okla. 1993) (rejecting argument that injured third-party claimant was third-party beneficiary of insured/tortfeasor's insurance contract because insurance contracts are only "intended for the protection of the insured").

The claims for negligence and constructive fraud fail for lack of duty. The Smiths do not have any contractual or other relationship with Shelter that gives rise to any duty of care or any duty to disclose facts. *See Berman v. Lab Corp. of Am.*, 268 P.3d 68, 72 (Okla. 2011) (element of negligence is duty owed by defendant to plaintiff); *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1046 (Okla. 2003) (explaining that constructive fraud is a breach of a legal or equitable duty to the detriment of another, in contrast to actual fraud, which is any intentional misrepresentation or concealment of a material fact with intent to deceive).

---

[3] Shelter also moved to dismiss certain "affirmative defenses" because the Smiths request that the Court somehow convert such defenses to counterclaims. (*See* Countercl. & Aff. Defenses, Doc. 40, ¶¶ 11-12.) However, the Court does not construe any of the Smiths' affirmative defenses as counterclaims, and there is no need to address them as such.

The claim for actual fraud is based upon intentional misrepresentations/concealment by Shelter either (1) in the Complaint, or (2) in response to requests from the Smiths or their counsel during litigation. However, neither type of alleged conduct states a plausible claim for relief. First, any alleged "fraud" in the Complaint would constitute fraud on the Court rather than fraud on the Smiths. *See Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (explaining that fraud on the court is fraud directed to judicial machinery itself and not fraud between the parties). Therefore, any intentional misrepresentation/concealment in the Complaint for Declaratory Relief cannot provide a basis for rewarding the Smiths tort damages.

Second, any alleged "fraud" related to Shelter's non-disclosure of certain policies during litigation is also not actionable. In this litigation, Shelter contends no other policies are relevant to the limited declaratory relief it seeks, and such argument is not frivolous. The Smiths have not sought to compel such policies, and the Smiths cannot be said to have a ripe fraud claim based upon non-disclosures occurring prior to or at the outset of litigation. In the Creek County Action, the Smiths did not move to compel the allegedly withheld policies, rendering it problematic to now cry "fraud" based on any non-disclosure. Even assuming the allegedly non-disclosed policies were somehow wrongfully concealed or withheld in the Creek County Action, this would at most amount to discovery abuse, which generally does not rise to the level of fraud. *See id.* at 1292 ("Allegations of discovery abuses of this kind do not rise to the level of fraud between the parties. This is especially true when, as here, the information was not directly contested in the judicial proceedings . . . ."). Nor have the Smiths alleged facts supporting the existence of a deliberate plan or scheme to somehow gain an advantage over them. *See id.* (finding no fraud for purposes of Rule 60(b)(3) motion where there was "no intent to interfere with [the opposing party's] case"). Discovery

6

disputes of the type alleged may be remedied by filing a motion to compel and/or for sanctions, not by filing a fraud claim. Therefore, the Smiths' claim for actual fraud, even assuming it is pled with particularity as required by Rule 9, must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### IV. Shelter's Rule 41(a)(2) Motion

Shelter moved to dismiss Defendant OTA because such defendant stipulated that it would be bound by the final judgment without participating in this action. (*See* Doc. 55.) Shelter also moved to dismiss Defendant NAICO because such defendant disclaimed any interest in the proceeds of the Policies. (*See* Doc. 20.) The Smiths were the only parties that objected, thereby requiring Shelter to seek leave of Court for these dismissals. The Smiths did not file any opposition brief. For good cause shown, the Rule 41(a)(2) Motion will be granted.

### V. Conclusion

The Smiths' Rule 12(b)(1) Motion (Doc. 49) is DENIED. Shelter's Rule 12(b)(6) Motion (Doc. 45) is GRANTED. All Counterclaims asserted by the Smiths are dismissed with prejudice. Shelter's Rule 41(a)(2) Motion (Doc. 56) is GRANTED. All claims against Defendants Oklahoma Turnpike Authority and National American Insurance Company are dismissed without prejudice, and these two defendants are terminated as parties to the litigation.

The remaining parties are ordered to submit a Joint Status Report no later than fourteen days from the date of this Order.

SO ORDERED this 7th day of January, 2015.

TERENCE C. KERN
United States District Judge