## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELTER GENERAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 14-CV-190-TCK-PJC ) ) |
| EARTHSMART CONSTRUCTION INC., *et al.*, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 69).

**I.     Background**

The following facts are not disputed for purposes of this motion. Plaintiff Shelter General Insurance Company ("Shelter") issued two policies to Mark Remington: (1) policy number 35-1-C-7511455-10 on a 1995 Doonan drop-deck trailer ("Trailer"), effective November 14, 2011; (2) policy number 35-1-C-7511455-13 on a 2001 Freightliner semi-tractor ("Tractor"), effective August 22, 2012. Each policy has a $100,000 limit for bodily injury and property damage caused to a third party ("liability coverage"). Both policies contain a Motor Carrier Coverage Form, which contains the following provision:

> Section V - Motor Carrier Conditions
> . . .
> B.     General Conditions
> . . .
> 8.  Two or More Coverage Forms or Policies Issued by Us
> If this coverage form and any other coverage form or policy issued to you by us . . . apply to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy.  This condition does not apply to any coverage form or policy issued by us . . . specifically to apply as excess insurance over this coverage form.

(Pl.'s Mot. for Summ. J., Exs. 3, 5.)[1] Both policies define "accident" as "continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage." (*Id.* at Section VI.A.) Neither policy was issued as "excess" insurance.

On August 29, 2012, Bobby Zinn ("Zinn") was driving the Tractor, with the Trailer attached, to pick up a load of hay.[2] On his return trip, Zinn was traveling west on I-44 near Sapulpa when he was involved in a four-vehicle accident. The Official Oklahoma Traffic Collision Report ("Collision Report") identifies four vehicles in a diagram and describes the accident as follows:

> ALL UNITS WERE WESTBOUND, UNIT 3[3] WAS NOT DEVOTING FULL ATTENTION AND RAN UP ON UNIT 1 NOT REALIZING UNIT 1 WAS TRAVELING SLOWER. UNIT 3 THEN MADE A UNSAFE LANE CHANGE IN FRONT OF UNIT 2,[4] AND ALMOST INTO THE SIDE OF UNIT 4. UNIT 4 HONKED HER HORN TO AVOID BEING HIT BY UNIT 3.
>
> UNIT 3 THEN SLAMMED ON HIS BRAKES TO AVOID HITTING UNIT 4. THIS CAUSED UNIT 2 TO STRIKE UNIT 3 FROM THE REAR. UNIT 2 THEN LOST CONTROL OF HIS STEERING AND SWERVED RIGHT STRIKING UNIT 1 IN THE DRIVER SIDE WITH THE END OF HIS TRAILER. THIS FORCED BOTH UNITS 1 AND 2 OFF THE ROADWAY THROUGH THE GUARDRAIL. AFTER DEPARTING THE ROADWAY BOTH UNITS 1 AND 2 CAUGHT FIRE AND WERE COMPLETELY BURNT. UNIT 4 SUSTAINED DAMAGE TO THE REAR AND SIDES DUE TO BEING STRUCK BY FLYING DEBRIS FROM THE COLLISION OF TRUCKS.

(Pl.'s Mot. for Summ. J., Ex. 6.) Thus, according to the Collision Report, Zinn hit the driver in front of him (with the Tractor) and then changed lanes in front of Foster Oil's driver. Foster Oil's

---

[1] This provision is hereinafter referred to as "Section V.B.8."

[2] For purposes of this Opinion and Order, there is no dispute that Zinn had Remington's permission and was an authorized user of both the Tractor and Trailer.

[3] Unit 3 refers to the Tractor and Trailer being driven by Zinn.

[4] Unit 2 refers to a vehicle being driven by an agent of Defendant Houston Edsel, Inc. d/b/a Foster Oil ("Foster Oil").

2

driver then hit Zinn in the rear (the Trailer), lost control of his vehicle, and ran off the road along with another vehicle.

On April 24, 2014, Shelter filed this action against thirteen interested Defendants seeking a declaratory judgment that "the amount of liability coverage provided by the Policies is limited to $100,000." (Compl. 4.) On April 29, 2015, Shelter filed this motion for summary declaratory judgment, seeking summary declaratory judgment that Section V.B.8 of the policies is "enforceable so that only one policy limit of $100,000 applies to the Accident." (Mot. for Summ. J. 9.) Of the thirteen Defendants, only Foster Oil and Janet Smith have entered an appearance and remain as parties to the action. Several Defendants have been terminated, and several have failed to enter an appearance. Only Foster Oil filed a response to Shelter's motion for summary judgment.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

3

### III.     Shelter's Motion for Summary Judgment

Shelter seeks a summary declaratory judgment that Section V.B.8 lawfully prohibits any "stacking" of the $100,000 liability limits based upon the Oklahoma Supreme Court's decision in *Gordon v. Gordon*, 41 P.3d 391, 392 (Okla. 2002).

#### A.     *Gordon* Rule

The Oklahoma Supreme Court has clearly held that provisions such as Section V.B.8, commonly referred to as "other insurance" provisions, are enforceable against third parties seeking liability coverage. *Gordon v. Gordon*, 41 P.3d 391, 392 (Okla. 2002) ("The courts that have construed provisions prohibiting stacking of liability coverages . . . have overwhelmingly held that such provisions are 'not unconscionable and may properly be enforced.'"). Although the court acknowledged that "there are serious public policy arguments" to be made against enforcing such provisions to prohibit stacking of medical payment coverage or uninsured motorist ("UM") coverage, the court held that "there is no public policy basis for refusing to enforce clear and unambiguous terms of automobile liability insurance policies that serve to prohibit stacking of *liability* coverages." *Id.* at 394 (emphasis added). Because liability coverage is for the ultimate benefit of third parties, cases permitting stacking of medical pay and UM coverages for the benefit of the insured "simply do not apply in cases involving liability coverage." *Id.* Thus, Section V.B.8 is generally enforceable against third parties such as Foster Oil.

#### B.     Foster Oil's Arguments

Foster Oil argues that a summary declaratory judgment is not appropriate because: (1) Shelter failed to establish any facts regarding whether separate premiums were paid for each policy; and (2) *Gordon* does not apply because both insured vehicles -- the Tractor and the Trailer -- were involved in the accident.

4

### 1.     Separate Premiums

Relying upon *Withrow v. Pickard*, 905 P.2d 800, 803 (Okla. 1995), Foster Oil argues that Shelter is not entitled to summary judgment because Shelter failed to allege facts regarding whether Remington paid separate premiums for the two policies. This argument is entirely misplaced. *Gordon* teaches that courts must enforce "other insurance" provisions against third parties seeking liability coverage without regard to whether the insured paid separate premiums or other policy considerations that may be relevant in UM or other first-party coverage cases such as *Withrow*.

### 2.     Both Insured Vehicles Involved in Accident

*Gordon* involved a third party's unsuccessful attempt to "stack" liability coverage for a vehicle involved in the accident with coverage for a vehicle not involved in the accident in any manner. Foster Oil contends that this factual distinction renders *Gordon* inapplicable. Specifically, Foster Oil argues:

> [T]he cases cited by Plaintiff . . . involve attempts to "stack" policies of vehicles insured but not involved in the accident. Here, the vehicles were each involved in different accidents with different drivers. If a separate premium were paid and the language of the policy were allowed to be applied as the Plaintiff alleges, the coverage on the trailer would be illusory. In essence, the premium on one of the vehicles would be paid for no additional coverage the minute the two were combined by a hitch. Under Plaintiff's interpretation of "accident" and this policy language, if the separately insured trailer was hitched to another tractor, and the separately insured tractor had a non-insured trailer, and the two (insured tractor next to tractor pulling insured trailer) were driving next to each other and ran two separate cars off the road at the same time, those drivers could only collect one policy limit. That result, and the result of this case, do not purport to the reasoning of the cases cited by Plaintiff which involve vehicles wholly unrelated to this action. As such, those cases are clearly distinguishable on the facts and are not dispositive of this case.
>
> Here, there are two policies covering two "vehicles" that damaged different drivers. This is not a case of seeking to "stack" a policy on a vehicle sitting in the garage and not involved in the accident. Here there were a series of collisions that involved a tractor and a trailer that each had separate policies that just happened to be written by the same company. Presumably, each even required payment of separate premium for coverage.

5

> This is not a simple case of "stacking" which normally involves the combining of limits of different vehicles (not involved in the accident) covered on the same policy. Here, two separate vehicles with two separate policies (with presumably different premiums) were involved in different collisions and caused different damage to different drivers. Really, this is not a case of stacking at all, as that term is traditionally understood. It is a case where different insured vehicles were involved with different drivers which caused a series of "accidents." It is not a question of combined coverage but one of applicable coverage. At the very least, the issue of which insured "vehicle" caused damage to which driver is a question of fact. Each of these policies could in fact be applicable to different drivers in this case.

(Resp. to Mot. for Summ J. 4-5.)

The Court begins with the language of Section V.B.8, which provides that third-party liability coverage is limited to $100,000 "[i]f this coverage form and any other coverage form or policy issued to you by us . . . apply to the same 'accident.'" The Court finds all relevant language to be unambiguous and applicable to the factual scenario presented. First, the two "coverage forms" at issue are the Tractor policy and the Trailer policy. The Court finds it irrelevant which policy is "this coverage form" and which is the "other coverage form" for any given third party seeking liability coverage. Thus, Foster Oil's attempt to avoid summary judgment based on factual disputes regarding which defendant collided with the Trailer and which collided with the Tractor is unavailing.

Second, Shelter has established the existence of one "accident," *i.e.*, "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" According to the Collision Report, which is not factually disputed for purposes of this motion, Zinn set in motion a series of events that resulted in multiple collisions between vehicles. This series of events occurred in rapid succession; there was no significant break in time between any of the various collisions; and the incident generated only one "accident" report from the Oklahoma Highway

6

Patrol. All evidence points to "continuous or repeated exposure to the same conditions" and the existence of only one accident.

The Court's holding means that if the Tractor and Trailer are hitched together and cause an accident, there exists a $100,000 limit on third-party liability coverage. However, this does not render the Trailer's coverage illusory, as argued by Foster Oil. The Trailer may regularly be hitched to vehicles not insured by Shelter, in which case coverage would be available. Further, there is no reason to address Foster Oil's hypothetical of the insured tractor driving next to a tractor pulling the insured trailer and running two separate cars off the road at the same time. Although this might create a closer question as to the existence of two separate "accidents," that is not what occurred in this case. The two vehicles were hitched together and were clearly involved in the same "accident" as that term is defined in the policies.

### IV. Conclusion

Plaintiff's Motion for Summary Declaratory Judgment (Doc. 69) is GRANTED. Section V.B.8 of Shelter policies 35-1-C-7511455-10 and 35-1-C-7511455-13 is enforceable, and it limits liability coverage to $100,000 for the accident occurring on August 29, 2012.[5]

**SO ORDERED** this 2nd day of November, 2015.

*[signature: Terence C Kern]*

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[5] Based on the arguments made by Shelter and briefing before the Court, this declaration is expressly limited to the amount of liability coverage.